Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7179 | **DATE** | 8/29/2002 |
| **CASE TITLE** | Stephen D. Lawson vs. Jo Anne B. Barnhart | | |

**MOTION:**
[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Claimant's motion for summary judgment [19-1] is granted. The Commissioner's motion for summary judgment is denied [20-1], and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 8/29/2002 | |
| | | | date mailed notice | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHEN D. LAWSON,<br>        Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 01 C 7179<br><br><br>Magistrate Judge Morton Denlow |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephen Lawson ("Claimant" or "Lawson") seeks judicial review of the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Lawson claims the Commissioner's decision is not supported by substantial evidence and does not fully consider the limitations created by one of his impairments. Both parties now move for summary judgment. For the reasons stated herein, this Court denies the Commissioner's motion for summary judgment, grants Lawson's motion for summary judgment, and remands the case to the Commissioner for further proceedings.

## I. RELEVANT FACTS

### A. PROCEDURAL HISTORY

Lawson applied for DIB and SSI on January 28, 1994, claiming a football injury to his knees and subsequent infection left him disabled. (R. 295-302). After his application

was denied, Claimant filed a request for hearing (R. 162-63), which was conducted by Administrative Law Judge ("ALJ") Richard A. Palewicz on February 12, 1996. (R. 43-89). The ALJ found Claimant disabled from October 3, 1993 until January 21, 1996, but not thereafter. (R. 345-54).

On June 4, 1998, the Appeals Council vacated the unfavorable portion of the decision and remanded the matter for further consideration of Lawson's disability status following January 1996. (R. 365-68). Specifically, the Appeals Council directed the ALJ to correctly read the testimony given by Claimant's treating orthopedic surgeon, Dr. Boone Bracket, continue medical development of the case, obtain additional evidence concerning Claimant's obesity and orthopedic impairment, give further consideration to the treating source opinion in Exhibit 29, and if necessary, to obtain evidence from a vocational expert ("VE"). (R. 365-67).

On remand, the case was assigned to a different ALJ, Stephen H. Templin, who conducted a hearing on January 11, 1999. (R. 90-146). Judge Templin found that Claimant was not disabled because he could perform other work in the national economy after January 21, 1996. (R. 12-35).

## B. LAWSON'S HEARING TESTIMONY

Lawson was born on November 15, 1968. (R. 47). He graduated from high school in 1986 and has held a variety of jobs, including insurance salesperson and furniture deliverer. (R. 49-53). On October 3, 1993, he sustained a bilateral patellar tendon rupture

2

while playing football (R. 191-92), for which he underwent surgery and subsequently sustained persistent bacterial infection at the right knee. (R. 192, 210-11). His left knee returned to "just about" normal, while his right knee continued to cause him problems. (R. 125-26, 136).

At the 1999 hearing, Claimant testified he has continued difficulty with his right knee, including swelling and cramping due to poor circulation. (R. 126-28). He experiences edema in the sides, back and front of his right knee, which sometimes "pop[s]" in and out. *Id.* His need to elevate his lower extremity is unchanged since his 1996 testimony, which need is unscheduled and sporadic. (R. 128-30).

Lawson takes Ultram once every day or two to alleviate his pain. (R. 128-30). Ultram was prescribed by Dr. Brackett. (R. 128-30, 137). Claimant elevates his right leg for 15 to 20 minutes, three times a day, to control pain and swelling. (R. 127).

Claimant's diet and daily activities are relatively stable. (R. 135). He believes he weighs over 353 pounds, having weighed himself on a public scale. (R. 123, 135). He has not sought vocational rehabilitation services and was unaware of available options. (R. 135-36).

## C.  MEDICAL EVIDENCE

The January 1999 Medical Examiner ("ME"), Dr. William Newman, noted there was little medical information concerning the Claimant's condition since the 1996 hearing. (R. 97-98). The medical evidence consists of submissions by Dr. Brackett (including post-

3

hearing submissions); the report of a forensic, consultative, orthopedic examination (obtained post-hearing); a submission by the 1999 reviewing physician consultant; and submissions by the 1996 medical expert in neurology and the 1999 medical expert in orthopedic surgery.

**1. Dr. Boone Brackett** (Treating Orthopedic Surgeon)

Dr. Brackett was Lawson's Orthopedic Surgeon and repeatedly saw him between the 1993 surgery and 1996 hearing. (R. 262-94). Dr. Brackett saw Claimant in January 1996 and reported that he was capable of some activities and could sit for prolonged periods, but was limited in his ability to lift or carry items, but he could not squat, crawl or climb. (R. 326-28). Dr. Brackett reported Claimant would have to elevate his right leg for 15-30 minutes, three times a day in order to control pain and swelling. (R. 326-28).

In March, 1999 Dr. Brackett responded to inquiries from the ALJ and stated Claimant's injury is "a serious injury and potentially disabling" and the continued swelling was related to the injury and the need to repair the injury and keep it casted during the healing phase. (R. 391). In October, 1999, Dr. Brackett reported that "Lawson would be best served by elevating his leg in the manner which was necessary in 1996." (R. 427). In neither of these reports did Dr. Brackett indicate whether such a need was sporadic or whether it could be scheduled into regular work breaks.

**2. Forensic, consultative, and orthopedic examination report**

On remand, ALJ Templin ordered a forensic, consultative, orthopedic examination of Lawson, which took place in July 1998. (R. 16, 24, 369). Though the order specifically

4

requested an accurate measurement of Lawson's height and weight, no such measurements were accurately obtained. (R. 25, 370). Concerning this examination, Lawson testified no measurements were recorded at his first visit and he was asked to return for a second visit. (R. 121-24). At the second visit, the nurse could not accurately determine his weight and therefore asked Claimant his weight, which he reported as being around 354 pounds. *Id.* However, the report received by the ALJ indicated a weight of 340 pounds (R. 370), which discrepancy the Claimant could not explain. (R. 124-25).

**3. Dr. Irwin I. Feinberg** (Reviewing Physician Consultant)

After the remand by the Appeals Council, Dr. Feinberg performed a consultative orthopedic examination on July 6, 1998. (R. 369-71). Dr. Feinberg reported various abnormalities in the knees, particularly the right, with loss of right parapatellar contours (R. 370-71) and loss of motion in the right knee. (R. 372-74). Dr. Feinberg concluded that, while able to perform some activities, Claimant's condition would also cause some limitations. (R. 372-75). The loss of parapatellar contours meant that there was swelling around the kneecap. (R. 117). Dr. Feinberg noted that Claimant experienced chronic swelling. (R. 374).

**4. Dr. Stephen Brint** (ME Neurology) **& Dr. William Newman** (ME Orthopedic Surgery)

Dr. Steven Brint, the 1996 ME (medical expert in neurology), testified that he did not have any reason to dispute Dr. Brackett's opinion that Claimant needed to elevate his right leg 15-30 minutes at least three times a day because of swelling. (R. 86). He assumes

5

Lawson has residual arthritis of the right knee and that the type of pain Lawson continued to experience was consistent with his medical history. (R. 87).

Dr. William Newman, the 1999 ME (board certified expert in orthopedic surgery), testified as a medical advisor at the second hearing. He reviewed Lawson's injury, surgery, and infection, and noted the examiner's conclusions that cruciate and collateral ligaments of the knees were intact was significant because no record of any damage to other knee supporting ligaments existed. (R. 101-03). As such, the ME opined Lawson's perception of instability was explained by the evidence that Lawson could not fully extend his right leg, though Dr. Brackett's progress notes indicated Claimant had at times fully extended his right knee. (R. 103-04).

Dr. Newman opined the lack of complete extension/flexion of the right knee was Lawson's only established impairment and the record did not establish any arthritis in the right knee. (R. 105-09). He testified that arthritis, if present, would produce pain. (R. 109). Though this impairment could still be medically equivalent to arthritis, the ME stated ambulation would not be expected to produce pain, rather only fatigue. (R. 114). He was under the impression that there had been no x-rays since Lawson's injury in October, 1993. (R. 111-12).

Dr. Newman further testified no reasonable relation between Claimant's impairment and edema could be established, and he could not find any orthopedic abnormality in the record to account for the Claimant's complaints of pain. (R. 113-14). He also testified

Ultram is an analgesic and would be prescribed for pain. (R. 114-15). Lastly, he explained elevation of a lower extremity is normally done to reduce swelling in the foot or ankle, and as such the ME could not understand the purpose of Lawson elevating his right knee. *Id.*

### D. VOCATIONAL EXPERT RICHARD J. HAMERSMA, Ph.D.

A vocational expert (VE) testified at the January, 1999 hearing. The VE testified that a person of Lawson's vocational profile, who was physically incapable of light work, but capable of a full range of sedentary work could not perform Lawson's past jobs, but could perform other work. (R. 139-41). When asked to assume that the hypothetical person would also have to elevate his leg for 15-30 minutes three times a day, at times other than scheduled breaks, the VE testified that no jobs would be available. (R. 141-43).

### E. THE ALJ'S DECISION

On January 25, 2000, ALJ Templin denied Lawson's claim, finding Lawson could perform a limited range of light work, despite his impairments, from January 21, 1996 until the date of the decision. (R. 15-35). This decision was based on the five-step analysis required under 20 C.F.R. §§ 404.1520 and 416.920.

Because Claimant did not engage in substantial gainful activity since filing his application, the ALJ found Lawson met his burden at step one. (R. 29). At step two, the ALJ found the medical evidence to fully establish the existence of at least one, severe, medically determinable impairment. *Id.* He listed the established impairments as the lack of full extension of the Claimant's right knee and Claimant's overweight or obesity. He did not find

the Claimant's contention of a third impairment, edema of the right lower extremity, to be medically determinable. *Id.*

The ALJ found, at step three, Claimant's impairments, singly or in combination, did not meet or equal the requirement of any impairment listed in Appendix 1, Subpart P, Regulations No. 4 ("Listing of Impairments"). (R. 29-30). He noted Lawson's contention that he would have met a listing requirement under § 9.09 (obesity), had the Commissioner not removed § 9.09 prior to the issuance of the ALJ's decision. However, the ALJ disagreed that Claimant had met his burden, and further explained such a showing would be moot as the Commissioner's deletion was retroactive, and therefore, Claimant could not be found medically disabled under listing § 9.09. (R. 30).

At step four the ALJ decided whether Claimant could meet the physical and mental demands of his past relevant work despite his impairments. Included in this step is a finding concerning Claimant's residual functional capacity ("RFC"). The ALJ found Lawson could not perform his past relevant work. (R. 30, 32-33).

The burden shifted to the Commissioner at step five to show whether Claimant was physically and mentally capable of performing work in the national economy, despite his impairments. The ALJ found the Commissioner met her burden because Claimant could perform work including small products assembler (8,000 positions), inspector jobs (3,500 positions), and hand packager jobs (7,000 positions) in the Chicago Metropolitan Area. (R. 421). Therefore a finding of "not disabled" was entered. (R. 33).

## II. LEGAL STANDARDS

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, the ALJ's findings must be supported by more than a mere scintilla of the evidence. *Id.*

A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Rather, judicial review is limited to determining whether the ALJ applied the correct legal standards in researching its decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *Scivally v. Sullivan*, 996 F.2d 1070, 1075 (7th Cir. 1992). The SSA gives a court the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

In order to be entitled to DIB or SSI under Title II of the SSA the Claimant must establish a "disability" as defined by the Social Security Act. To establish a "disability" the Claimant must show he is suffering from a medically determinable physical or mental impairment which can be expected to result in death or, which has lasted or can be expected to last for at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Additionally,

an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Regulations provide a five-step process to determine whether a Claimant has established a "disability." 20 C.F.R. § 404.1520. The process is sequential; if the ALJ finds that the Claimant is not disabled at any step in the process, the analysis ends. *Id.* The ALJ must inquire: 1) whether the Claimant is still working; 2) whether the Claimant has a severe impairment; 3) whether the Claimant's impairment meets or equals a listed impairment; 4) if the Claimant does not suffer from a listed impairment, whether he can perform past relevant work; and 5) whether the Claimant is capable of performing any work in the national economy. *Id.*

### III. ANALYSIS

The issues presented are: 1) whether the ALJ's determination that Lawson was capable of performing work in the national economy was based on substantial evidence, and 2) whether the ALJ erred in failing to consider Mr. Lawson's obesity under listing § 9.09.

### A. THE ALJ'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Lawson contests the ALJ's step-five decision finding him capable of performing work in the national economy. (R. 32-33). The burden of proof is on the Commissioner at step five. *Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir 1994). In making a decision, the ALJ

must articulate his analysis of the evidence. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). He does not need to address each testimony or piece of evidence, but must provide some glimpse into his reasoning. *Id.* Where a denial of benefits is found, the ALJ must build an accurate and logical bridge from the evidence to the conclusion. *Id.*

Claimant's case hinges on whether he must repeatedly and unpredictably elevate his right leg. (R. 30). The VE was directly questioned concerning an employee's need to elevate a leg and answered there were thousands of jobs Claimant could perform unless the need to elevate was unpredictable. (R. 139-42). Interestingly, the ALJ went to great lengths discussing whether Claimant's assertions of pain and swelling were medically established, but never examined the simpler, yet still dispositive, issue as to whether Claimant's need to elevate his leg was sporadic. This discussion was based to a large extent on the opinion of Dr. Newman, the 1999 ME who explained there was no medical evidence, such as arthritis, to support Claimant's assertions of pain and swelling. (R. 30-33).

However, the record contains substantial medical evidence supporting Claimant's assertions of pain and swelling which undermines Dr. Newman's opinion that no such evidence exists. Dr. Brackett, a long-term treating source with great familiarity of Lawson's condition, documented indications of pain and swelling and Claimant's need to elevate his leg to reduce such swelling in 1996 and 1999. (R. 326-28, 427). This evidence was discounted by the ALJ despite the requirement that opinions of treating doctors be entitled to greater weight than those of non-treating doctors. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th

11

Cir. 2000). Moreover, such opinion is of controlling weight where it is supported by medical findings and not inconsistent with substantial evidence of record. *Id.* The ALJ further erred in stating Dr. Brackett's 1996 examination only indicated a need for scheduled breaks. (R. 31). The examination indicated a need for periodic breaks and did not state whether such breaks could be scheduled. (R. 326-28, 427).

Additional evidence exists supporting Claimant's assertions of pain and swelling in opposition to Dr. Newman's mistaken assumption upon which the ALJ relied. The record contains evidence of inflammatory joint disease (R. 279), possible osteonecrosis (R. 282), degenerative changes (R. 277), a significant amount of arthritis (R. 415), degenerative arthritis (R. 404), knee swelling (R. 374), and continued swelling. (R. 391). Claimant has suffered from an infection and medical evidence shows the existence of significant arthritis or other degenerative disease. (R. 117-19, 396, 415). Lawson also took pain medication, including Ultram. These have been provided continuously since Lawson's surgery.

The ALJ attacks Lawson's credibility based upon Dr. Newman's mistaken assumption that there was no objective medical evidence to support Claimant's claims of pain and swelling. As a first approximation, a reviewing court should give special deference to the ALJ's credibility finding as he is in the "best position to see and hear the witness and assess their forthrightness." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, such a determination must consider subjective complaints where such complaints are supported by medical evidence. *Clifford*, 227 F.3d at 87. Inasmuch as the ALJ's credibility

determination was based on Dr. Newman's mistaken assumption, Claimant's credibility must be re-assessed.

Because the ALJ's unfavorable decision is based largely upon Dr. Newman's opinion, the ALJ must look at whether Lawson's pain and swelling necessitate a periodic and *sporadic* elevation of his right leg or a periodic and *scheduled* elevation of his right leg. Such a determination, coupled with the VE's testimony, would allow for a disability determination supported by the record's medical evidence. Currently, the information in the record consists of Lawson's testimony that he has such an unpredictable need (R. 72, 76, 77, 126-28, 130-32), Dr. Brackett's 1996 and 1999 reports that Claimant needed to periodically and repeatedly elevate his leg (R. 326, 427), Dr. Brint's 1996 testimony stating he did not disagree with Dr. Brackett's 1996 assessment (R. 86), and Dr. Newman's 1999 testimony explaining he could not understand the purpose of Claimant's leg elevations as he found no basis for the Claimant's complaints of pain and swelling. (R. 28).

In making this determination, the ALJ should consult Dr. Brackett for elaboration on his 1996 and 1999 reports to determine whether Lawson's pain and swelling requires a sporadic elevation of the right leg or whether it can be accommodated with a scheduled elevation of the leg at regular work breaks. He should also consult any other testimony or evidence which would elaborate this issue. Should the evidence reflect a limitation other than those presented to the VE (scheduled and unscheduled elevation breaks), the ALJ will need to further consult with a VE concerning Lawson's ability to perform work in the

national economy.

## B. THE ALJ DID NOT FAIL TO CONSIDER LAWSON'S OBESITY

After concluding the Claimant's medical evidence fully established the existence of "at least one, severe, medically determinable impairment," the ALJ specified that both impairments of full extension of the right knee and obesity had been established. (R. 29). In so doing, he was consistent with the principle that all of a Claimant's impairments must be considered in assessing disability. *See Clifford*, 227 F.3d at 873. However, some impairments alone can constitute a listing requirement. Previous to being deleted from the Listing of Impairments [1], listing § 9.09 would have allowed Claimant to be found disabled upon a showing of obesity.

Claimant contends the deletion should not be applied to his case, even though the ALJ's final decision was entered after the deletion became effective, because the hearing occurred before the effective date. However, even if the ALJ erred in his interpretation, Claimant's assertion that he would have a listing level of obesity is not supported by the record. The ALJ specifically found Claimant's weight did not meet or exceed the criteria of the former § 9.09. (R. 30). The forensic, consultative, orthopedic examination lists Claimant's weight as 340 pounds and Claimant made no attempt to affirmatively and medically record his weight. Though Claimant personally testified he weighs enough to qualify for a listing level of obesity under § 9.09, the ALJ had sufficient evidence to conclude

---

[1] See Fed. Reg. at 46122, effective October 25, 1999.

that he had not met his burden.

## IV. CONCLUSION

The ALJ's final decision denying Claimant benefits on the grounds he was capable of performing work in the national economy was not supported by substantial evidence. For the reasons set forth in this opinion, **Claimant's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.**

**SO ORDERED THIS 29th DAY OF AUGUST, 2002.**

_Morton Denlow_
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

M. Jacqueline Walther
Kielian and Walther
33 West Jackson Blvd.
Suite 201
Chicago, Illinois 60604
(31) 663-0842

Attorney for Plaintiff

James P. Fieweger
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-7846

Edward J. Kristof
Assistant Regional Counsel
Social Security Administration Office
 of the General Counsel, Region V
200 West Adams Street, 30th Floor
Chicago, Illinois 60606
(312) 353-9213

Attorneys for Defendant

# United States District Court
## Northern District of Illinois
Eastern Division

Stephen Lawson **JUDGMENT IN A CIVIL CASE**

v. Case Number: 01 C 7179

Jo Anne B. Barnhart

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Claimant's motion for summary judgment is granted. The Commissioner's motion for summary judgment is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Michael W. Dobbins, Clerk of Court

Date: 8/29/2002

Donna Kuempel, Deputy Clerk